# MYERS *v.* GROOM SHOVEL COMPANY.

PPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE
WESTERN DISTRICT OF PENNSYLVANIA.

No. 70. Argued November 4, 1891.—Decided December 7, 1891.

Letters patent No. 208,258, granted September 24, 1878, to Henry M. Myers for an "improvement in handle sockets for shovels, spades and scoops," are void for want of novelty in the alleged invention covered by them, that invention having been anticipated by the "Ames California spade."

THE case is stated in the opinion.

Mr. *W. Bakewell* for appellant.

Mr. *Francis T. Chambers* for appellee.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

This was a bill exhibited by Henry M. Myers against The Groom Shovel Company, in the Circuit Court of the United States for the Western District of Pennsylvania, for infringement of letters patent No. 208,258, dated September 24, 1878, for "improvement in handle sockets for shovel, spades and scoops."

The answer denied that Myers was the first inventor, and set up want of novelty; public use and sale for more than two

years before the application; anticipation; and non-infringement.

The Circuit Court held that, in view of the state of the art, if the patent were within the domain of patentable invention, it was so close to the line as to render it fairly disputable whether it might not be assigned to the category of products of mere mechanical skill; and that, however that might be, the invention was not essentially distinguishable in construction from a spade known as the "Ames California spade," which was a clear anticipation of the patented device. A decree dismissing the bill was therefore entered.

The application was made April 20, 1878, and reference to the file wrapper and contents shows that the original claim read as follows: "A shovel, spade or scoop provided with a socket and straps combined and constructed in two pieces for attaching the handle to the blade, substantially as herein described and for the purpose set forth." This claim was rejected as anticipated by patent for shovels, No. 186,520, issued to E. A. Barnes, January 23, 1877. It was thereupon amended by substituting the present claim, which reads: "As an improved means of securing handles to shovels the herein described combined socket and straps, the same being composed of the two straps, C D, forming a union at $g$ and terminating in the socket $e$, as shown and described." The application was again rejected on the ground that the amended claim did not possess patentable novelty in view of patent No. 160,170, for shovels, issued to P. B. Cunningham, February 23, 1875, and patent No. 113,805, for tool handles, issued to D. G. Smith, April 18, 1871. The applicant thereupon erased from his specification the words just preceding his claim: "Having thus described my improvement, what I claim as of my invention is," and inserted in lieu thereof the following: "I am aware that a continuous socket for shovels has been made in two pieces, and I am also aware that a solid socket has been formed with handle straps, but in contradistinction to such I claim." The application was then allowed and the patent issued. With the exception of the paragraph thus added by way of amendment, the specification of the patent is identical with that originally filed.

The claim in the Barnes patent was for " a scoop having front and back straps forming a socket for the handle, the back strap of a separate piece from the body or bowl of the scoop, said back strap being riveted on the curve of the bowl, and back of the line of wear, substantially as and for the purpose specified."

The method of construction of this shovel or scoop was the formation of a socket by two straps, between which the wooden handle was fitted in, the straps meeting on their sides, forming a socket throughout their entire length.

The Smith patent was an invention for attaching handles to spades, forks and other implements, consisting in a socket or tubular portion having two straps, which socket and straps received the wooden handle. The socket was called by the patentee a ferrule, and the claim was for the ferrule as described, combined with a ring applied to its end.

The Cunningham patent described a construction similar to that of Smith, but the shovel blade was attached by means of a metal tongue in connection with the straps.

The Myers disclaimer aimed to differentiate the Myers claim from the Barnes continuous socket made of two pieces, and the Smith and Cunningham solid socket formed with extensions or straps, as stated therein. In the Myers patent the wooden handle is secured to the blade of the shovel by two straps, which at their parts next to the shovel blade are bent around the handle to form a socket, the lower part of the wooden handle being received in the socket or ferrule, and the straps extending up upon the body of the handle.

The defendant's expert Hunter, after describing the Barnes, Smith and Cunningham patents, testified that these constructions being old, " the distinction upon which the patent of Myers is based, is that the straps which extend up upon the body of the handle must be bent around the said handle to form a union close to the shovel blade and form a socket, but in which the remaining parts of the straps further up upon the handle shall not meet upon their sides;" and further that, "the Myers construction is substantially identical with what is shown in the Barnes patent if the straps forming the socket

at the upper end of the Barnes patent were slightly spread or extended with less width. It would be the same as the construction shown in the Smith and Cunningham patents if the sockets of the said patents were split longitudinally, as shown in the Barnes patent. The construction shown in the Barnes patent, in which the straps form a socket throughout its entire length, is undoubtedly much stronger than the Myers construction." He concluded, therefore, that there was no particular difference between what was shown and claimed in the Myers patent and what was shown in the prior patents referred to.

As to the Ames California spade, he testified: "The California spade shows a construction in which the handle is secured to the blade by means of two straps, which approach each other at their ends next to the blade and form a union or practical union and make a socket, in which the lower part of the handle is encased. I therefore find the said California spade to have a construction in which the handle is secured by a socket and straps, the two straps forming a union near the blade and terminating in a socket substantially in the manner and for the purpose set out and claimed in the Myers patent. It will be seen from this that the California spade has a construction having all the advantage of the ordinary handle straps combined with the socket, whereby the handle is greatly strengthened and securely attached to the blade, and consequently embodies all the advantages of the Myers construction. The two constructions are practically the same."

We quote thus at length from the testimony of this witness because, after a careful examination of the various exhibits in evidence, we quite agree with his conclusion. Counsel for appellant, referring to the California spade, says: "This spade has heavy straps, which are riveted to the blade of the spade at their lower end, and extend upward to within an inch and a half of the bow of the handle. They taper gradually from the blade upward. They do not, however, form a socket, because, while they nearly meet around the wooden handle near the blade, they are cut in at that point so as to form a ferrule around the wood, but not a socket on the blade."

But there is no description of any socket in the blade in the Myers patent. The specification says:

"In the drawings A represents a scoop blade, which may be of any of the known forms and constructed of the ordinary material. B represents the handle, which is constructed of wood. C and E represent the handle straps, which are cut (in the form shown in Fig. 4) from sheet iron or sheet steel and furnished with openings for the rivets used for attaching them to the blade A and handle B. The straps C and D are then swaged into the form necessary for the upper and lower strap, as indicated in Figs. 1 and 2, so that the edges $ff$ in Fig. 4 meet, as at $g$ in Figs. 2 and 3, forming the socket $e$ (indicated in Fig. 3). The parts $h$ and $i$ of the straps C and D are then riveted to the blade A. The straps C and D may be forged and plaited with the blade A. The handle B is then fitted into the socket $e$ and the straps riveted to the handle as shown in Figs. 1 and 2.

"By constructing handle straps in two pieces of the form shown in Fig. 2 a socket for the reception of the end of the handle is formed, having the advantage of the ordinary handle straps combined with said socket, whereby the handle is greatly strengthened and securely attached to the blade A, and said combined socket and handle straps are constructed with economy of labor and material and with great facility."

The drawings do not show any section of a socket within the blade. The socket shown is formed by riveting the straps to the blade, and the handle does not extend below the socket created by the union of the straps.

As this California spade is in all substantial respects the same as the implement described in the Myers patent, and, as appears from the evidence, was largely made and sold between 1860 and 1870, and had been in stock at the Ames Works, in Massachusetts, for fifteen or twenty years prior to 1886, we entirely concur with the Circuit Court, and the decree is consequently

*Affirmed.*

Mr. Justice Bradley and Mr. Justice Gray did not hear the argument, and took no part in the decision of this case.